**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JARRED LANG** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. 2:21-CV-760** |
| **LAWRENCE PALMISANO, III and THE BOAT YARD, INC.** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Jarred Lang asserts his causes of action against defendants Lawrence Palmisano, III and The Boat Yard, Inc. as follows:

### THE PARTIES

1.     Plaintiff is Jarred Lang, a person of age and majority, who is domiciled in Louisiana and resides in Orleans Parish.

2.     Defendant is Lawrence "Tracy" Palmisano, III, a person of age and majority, and who, upon information and belief, is domiciled in Louisiana.

3.     Defendant is The Boat Yard, Inc. ("Boat Yard"), a domestic corporation organized in Louisiana, registered and headquartered in Jefferson Parish, and actively doing business within Louisiana.

4.     The Boat Yard Inc.'s registered agent is Frank V. Zaccaria, Jr. Esq.

### JURISDICTION AND VENUE

5.     The Court has subject-matter jurisdiction over Mr. Lang's FLSA claims in this matter pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 206 *et seq*. (the Fair Labor Standards Act minimum wage provisions), as more particularly set-out herein.

6.     The Court has supplemental, subject-matter jurisdiction over Mr. Lang's Louisiana state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to his federal law claims that they form part of the same case or controversy as more particularly set-out herein.

7.     The Court has personal jurisdiction over Lawrence Palmisano because he is a citizen of Louisiana and is present within the forum at the time this lawsuit was filed.

8.     Alternatively, the Court has personal jurisdiction over Lawrence Palmisano as he regularly transacts business in Louisiana, has created, registered, and is President of one or more business corporations located in Louisiana, regularly employs Louisiana citizens, committed the specific unlawful acts within Louisiana giving rise to the causes of action in this case, and derives substantial revenue from the services he or his companies provide in Louisiana.  Thus, Mr. Palmisano has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

9.     The Court has personal jurisdiction over The Boat Yard, Inc. because it is a domestic corporation incorporated and headquartered in Louisiana, and, thus, the Boat Yard, Inc. is a Louisiana citizen.

10.    Alternatively, the Court has personal jurisdiction over The Boat Yard, Inc. as it regularly transacts or transacted business in Louisiana, regularly employs or has employed Louisiana citizens, committed the specific unlawful acts within Louisiana giving rise to the causes of action in this case, and derives or has derived substantial revenue from the services it provides or provided in Louisiana.  Thus, The Boat Yard, Inc. has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the parties contracted for Mr. Lang's employment and engaged in the FLSA and state-law wage violations alleged in this matter, and Mr. Lang's resulting harm was suffered, in this jurisdiction (specifically, Jefferson Parish).

## PROCEDURAL AND STATUTORY ALLEGATIONS

12.     Boat Yard employed Mr. Lang continuously from on or about March 23, 2018, until he was terminated on or about June 22, 2020.

13.     At all times Mr. Lang was the Boat Yard's employee, and the Boat Yard classified Mr. Lang as an employee.

14.     At all times Mr. Lang was employed as an inside salesman who primarily sold boats.

15.     At no time was Mr. Lang employed as an outside salesman.

16.     Defendants did not pay Mr. Lang any wages at all.

17.     Instead, defendants solely paid Mr. Lang commissions based on his weekly sales.

18.     To the extent Mr. Lang did not make any sales during a week, he was not paid any wages.

19.     To the extent Mr. Lang earned less in sales commissions during a week than what he was owed in minimum wage, defendants did not pay Mr. Lang the difference (such that Mr. Lang was ultimately paid less than what he was owed in minimum wage).

20.     Ultimately, Mr. Lang worked many hours across multiple weeks for defendants but was not paid the minimum wage he was owed.

21.     Upon information and belief, throughout Mr. Lang's entire employment with the company, Boat Yard was an enterprise engaged in commerce because (1) it had two or more employees who were engaged in interstate commerce; specifically, that the employees engaged in the sale of boats, boat components, boat upgrades, and boat accessories for Boat Yard, and these boats and

3

components had passed through interstate commerce; (2) Boat Yard would sell or contract to sell boats and components in interstate commerce; and (3) Boat Yard had gross volume of sales made or business done in 2018 and 2019 greater than $500,000.

22.     After his termination, Mr. Lang sent demand to Mr. Palmisano, the owner of Boat Yard, that Mr. Lang was owed unpaid minimum wages and unpaid sales commissions and would take legal action unless Mr. Palmisano paid Mr. Lang the amount owed.

23.     To date, Mr. Palmisano has not paid Mr. Lang any amount of money towards the unpaid wages or sales commissions he is owed.

24.     As alleged throughout this complaint, Lawrence Palmisano was the sole owner who held exclusive and total operating control over the operations of Boat Yard, and upon information and belief was the actual person who willfully underpaid Mr. Lang, set his hours and payrates, supervised and controlled his work, denied him owed wages, and later terminated Mr. Lang under pretextual circumstances, such that Mr. Palmisano was Mr. Lang's employer and is equally liable to Mr. Lang under the FLSA and Louisiana state law as is Boat Yard.

**FACTUAL ALLEGATIONS**

A.     **Background – Jarred Lang**

25.     Jarred Lang is a single father who lives with and cares for his minor son in New Orleans, Louisiana.

26.     Mr. Lang relies on his work and income to support his family.

B.     **Background – Mr. Lang's Employment with Boat Yard**

27.     To the best of his recollection, Boat Yard first hired and employed Mr. Lang on approximately March 23, 2018.

28.     Boat Yard is in the business of buying and selling boats, watercraft, boat accessories and upgrades, motorcycles, all-terrain vehicles, and various other kinds of equipment.

29.     At all relevant times in this case, Boat Yard employed Mr. Lang as an indoor salesman who focused on buying and selling boats, boat accessories and upgrades, and other equipment.

30.     At all relevant times during his work for Boat Yard, Mr. Lang handled and worked with watercraft, accessories, and other equipment that, upon information and belief, had traveled across state lines.

31.     At all relevant times in this case, Mr. Lang performed work for Boat Yard as an employee rather than an independent contractor.

32.     At all relevant times in this case, Mr. Lang operated in inside sales, he never had to travel to make sales, and customers would engage with him only at the Boat Yard's place of business.

33.     Mr. Lang's sole manager was Lawrence Palmisano, the president and owner of Boat Yard.

34.     Mr. Lang worked full-time for defendants and at their direction.

35.     Mr. Lang was not paid hourly for his work, he was solely paid through earning sales commissions.

36.     While working for the defendants in this case, from approximately March 2018 through June 2020 when the defendants terminated his employment, Mr. Lang was completely dependent on the defendants for his work and livelihood.

37.     Mr. Lang was required to report to work at the specific times and days as directed by defendants.

38.     Mr. Lang was not permitted to leave work until directed by the defendants.

39.     Mr. Lang received sales commissions as controlled and directed by the defendants on a biweekly basis.

40.     Mr. Lang's work responsibilities, including how he completed his work, were exclusively controlled by defendants.

41.     Mr. Lang had either no or otherwise insignificant money or other overhead invested in his job because all aspects of his job, how he performed his job, when he performed his job, what he used to perform his job, where he performed his job, and what jobs he was given were all exclusively controlled and provided by defendants.

42.     Mr. Lang had no opportunity for loss at his job because he had either no or otherwise insignificant capital or finances invested in the job.

43.     Mr. Lang's opportunity for profit was exclusively controlled by defendants because the defendants controlled when Mr. Lang could work, how he worked, and the basis on which sales commissions were earned and paid out.

44.     Upon information and belief, defendants knew that Mr. Lang was an employee rather than a contractor, and knew that under the FLSA he was owed a minimum hourly wage for his hours worked, but willfully refused to pay Mr. Lang those minimum wages during the weeks that Mr. Lang earned less in commissions than what he was owed in minimum wages.

**C.      Lawrence Palmisano Maintained Exclusive Operating Control of Boat Yard**

45.     Upon information and belief, the only person with ownership and operating control over the business of Boat Yard and the ultimate management of its employees was Lawrence Palmisano.

46.     Upon information and belief, Mr. Palmisano worked in the nature of the president and chief executive of Boat Yard.

**D.      Defendants' Refusal to Pay Minimum Wage**

47.     Defendants, through Mr. Palmisano, did not guarantee Mr. Lang any wage or salary whatsoever for his work.

48.     Instead, defendants, through Mr. Palmisano, only paid Mr. Lang commissions based on sales he actually made during the work week.

49.     Mr. Lang regularly worked more than forty (40) hours in a workweek for defendants, often working an average of fifty (50) hours in a workweek and sometimes as much as seventy (70) hours or more in a single week.

50.     Regardless of how many hours Mr. Lang worked per week, defendants would still only pay Mr. Lang earned sales commissions, which sometimes would not meet his statutorily owed minimum wages.

51.     Defendants paid Mr. Lang every two-weeks.  At the FLSA minimum of $7.25 for at least 100 hours of work every two work weeks, Mr. Lang was owed a statutory minimum of $870 for each two-week pay period.

**E.     Specific Weeks Defendants Failed to Pay Mr. Lang Minimum Wage**

52.      Upon information and belief, Mr. Lang worked approximately and at least 50 hours during his first work week from March 23 to March 30, 2018, for total minimum wages owed of $362.50, but Mr. Lang did not make any sales that week, and defendants paid him no wages.[1]

53.     Upon information and belief, Mr. Lang worked approximately and at least 100 hours during the work weeks of September 3 to September 16, 2018, but only received a paycheck for $401.73. Boat Yard thus owed Mr. Lang $323.27 in unpaid minimum wages for this pay period.

---

[1] Solely with respect to this paragraph (No. 52), plaintiff does not assert he is entitled to recover the $362.50 he was not paid in minimum wages for his work during the week of March 23 to March 30, 2018 because the applicable FLSA statute of limitations has elapsed with respect to just that workweek.  Otherwise, plaintiff demands full payment of all other unpaid minimum wages for all other workweeks alleged throughout this complaint.  This allegation (No. 52) is included solely as background evidence of defendants' willful failure to pay Mr. Lang the minimum wages he was owed.

54.     Upon information and belief, Mr. Lang worked approximately and at least 100 hours during the work weeks of October 15 to October 28, 2018, but only received a paycheck for $677.66. Boat Yard thus owed Mr. Lang $47.34 in unpaid minimum wages for this pay period.

55.     Upon information and belief, Mr. Lang worked approximately and at least 100 hours during the work weeks of January 7 to January 20, 2019, but only received a paycheck for $212.40. Boat Yard thus owed Mr. Lang $512.60 in unpaid minimum wages for this pay period.

56.     Upon information and belief, Mr. Lang worked approximately and at least 100 hours during the work weeks of August 19 to September 1, 2019, but only received a paycheck for $354.63. Boat Yard thus owed Mr. Lang $370.37 in unpaid minimum wages for this pay period.

57.     Upon information and belief, Mr. Lang worked approximately and at least 100 hours during the work weeks of November 11 to November 24, 2019, but only received a paycheck for $315.16. Boat Yard thus owed Mr. Lang $409.84 in unpaid minimum wages for this pay period.

58.     Upon information and belief, Mr. Lang worked approximately and at least 100 hours during the work weeks of December 23, 2019, to January 5, 2020, but only received a paycheck for $458.62. Boat Yard thus owed Mr. Lang $266.38 in unpaid minimum wages for this pay period.

59.     Upon information and belief, Mr. Lang worked approximately and at least 100 hours during the work weeks of February 3 to February 16, 2020, but only received a paycheck for $121.75. Boat Yard thus owed Mr. Lang $603.25 in unpaid minimum wages for this pay period.

60.     Upon information and belief, Mr. Lang worked approximately and at least 100 hours during the work weeks of February 17 to March 1, 2020, but only received a paycheck for $504.96. Boat Yard thus owed Mr. Lang $220.04 in unpaid minimum wages for this pay period.

61.     Upon information and belief, Mr. Lang worked approximately and at least 100 hours during the work weeks of May 25 through June 7, 2020, but only received a paycheck for $668.33.  Boat Yard thus owed Mr. Lang a total of $56.67 in unpaid minimum wages for this pay period.

62.     Upon information and belief, defendants owe Mr. Lang at least the sum of $2,809.76 in unpaid wages.  When doubled by the addition of liquidated damages, the minimum total amounts to $5,619.52.

63.     Upon information and belief, Mr. Lang may have gone uncompensated or undercompensated during other pay periods while employed with Boat Yard.

**F.     Defendants' Refusal to Pay Commissions Owed**

64.     As stated above, Mr. Lang's compensation from Boat Yard was based solely on earned sales commissions.

65.     Lawrence Palmisano held complete control over the amount of a sales commission that was actually paid out, and upon information and belief would regularly refuse to pay commissions earned by his employees, including Mr. Lang.

**G.     Specific Commissions Defendants Failed to Pay Mr. Lang During His Final Month of Employment**

66.     During his last two (2) weeks of work in June 2020, Mr. Lang earned a substantial amount of sales commissions that defendants refused to pay him.

67.     More specifically, on June 9, 2020, Mr. Lang sold a 2017 Poloris Sportsman 850 for a price of $7,000, which entitled Mr. Lang to a commission of $260.

68.     On June 11, 2020, Mr. Lang sold a 2020 Tracker TMG 2072L CC for a price of $34,940, which entitled Mr. Lang to a commission of $919.65.

69.     On June 12, 2020, Mr. Lang sold a 1999 Champion Coastal 200 for a price of $5,400, which entitled Mr. Lang to a commission of $274.

9

70.     On June 12, 2020, Mr. Lang sold a 2019 McClain AT-2040-15 for a price of $3,300, which entitled Mr. Lang to a commission of $230.

71.     On June 17, 2020, Mr. Lang sold a 2008 Sea Fox 256 for a price of $55,000, which entitled Mr. Lang to a commission of $1,380.

72.     On June 17, 2020, Mr. Lang sold a 2006 Pursuit 3480 for a price of $117,000, which entitled Mr. Lang to a commission of $4,492.

73.     On June 18, 2020, Mr. Lang sold a 2015 Single Axle Jet Ski for a price of $1,500, which entitled Mr. Lang to a commission of $260.

74.     On June 18, 2020, Mr. Lang sold a 2016 Tracker 175 TXW for a price of $15,500, which entitled Mr. Lang to a commission of $850.

75.     On June 19, 2020, Mr. Lang sold a 2009 Tracker Nitro XS for a price of $13,995, which entitled Mr. Lang to a commission of $1,219.

76.     On June 22, 2020, Mr. Lang sold a 2009 Scout Boy Scout 240 for a price of $33,000, which entitled Mr. Lang to a commission of $580.

77.     Thus, all together, upon information and belief, defendants owed Mr. Lang commissions on the sales listed in ¶¶ 67-76 of this complaint totaling $10,464.65.

78.     Under information and belief, defendants additionally failed to pay Mr. Lang his earned commissions from other sales in the months during his final month of employment, including but not limited to:

        a.      Approximately $500 in unpaid commissions for an "Edgewater" sale;

        b.      Approximately $500 in unpaid commissions for a "Sea pro solicit" sale;

        c.      Approximately $400 in unpaid commissions for a "Skeeter solicit" sale;

        d.      Approximately $660 in unpaid commissions for a "Kenner 18" sale;

    e.      Approximately $660 in unpaid commissions for a "Well craft" sale;

    f.      Approximately $500 in unpaid commissions for a "Bay Stealth Solocit" sale on or about June 22, 2020; and

    g.      Approximately $900 in unpaid commissions for a "2001 Sea Fox" sale on or about June 22, 2020.

79.    Thus, all together, upon information and belief, defendants also owe Mr. Lang commissions on these additional sales equaling $4,120.

80.    Thus, in total, as described in ¶¶66-79, during Mr. Lang's final two (2) weeks of work, he actually earned $14,584.65 in commissions.

81.    However, during Mr. Lang's final two (2) weeks of employment, defendants only paid Mr. Lang $4,000 in commissions.

82.    Accordingly, in sum total, defendants owe Mr. Lang approximately $10,584.65 in earned but unpaid commissions.

## H.    Other Outstanding Commissions Defendants Failed to Pay Mr. Lang Prior to his Termination

83.    Under information and belief, defendants failed to pay Mr. Lang his earned commissions from other sales in the months prior to his final month of employment, including but not limited to:

    a.      Approximately $1,500 in unpaid commissions for a "Pair of 2005 Mercury Optimax 150 Engines" sale on or about November 11, 2019;

    b.      Approximately $300 in unpaid commissions for a "Scout 153" sale on or about May 29, 2020;

    c.      Approximately $1,000 in unpaid commissions for a "Proline Solocit" sale on or about May 20, 2020; and

      d.     Other commissions extending to the beginning of Mr. Lang's employment with Boat Yard.

84.     Accordingly, defendants failed to pay Mr. Lang earned commissions on these sales totaling approximately and at least $2,800.

85.     Accordingly, all totaled, considering all unpaid and underpaid commissions throughout Mr. Lang's entire employment beginning in May 2018 through Mr. Lang's termination, including both during his last month of work and previous to that, defendants failed to pay Mr. Lang approximately and at least $13,022.15 in earned commissions.[2]

**I.**    **Boat Yard Terminates Mr. Lang's Employment for Pretextual Reasons**

86.     On or about June 22, 2020, Lawrence Palmisano terminated Mr. Lang's employment.

87.     Mr. Palmisano terminated Mr. Lang in the presence of at least another employee and others.

88.     Mr. Palmisano accused Mr. Lang of entering Palmisano's vehicle and "stealing" $12,000 from it.

89.     Mr. Lang never entered Palmisano's vehicle, ever, and did not steal any money or other items from Palmisano, ever.

90.     Under information and belief, Palmisano has never reported this alleged theft to law enforcement.

91.     Upon information and belief, Palmisano merely fabricated this account as pretext to terminate Mr. Lang's employment.

---

[2] This figure does not include the $362.50 in unpaid, minimum wages Mr. Lang earned during his first week of work from March 23 to March 30, 2018 as alleged in paragraph 52 of this complaint.

**J.      After Mr. Lang's Termination, Palmisano Begins a Campaign of Defamation**

92.      Upon information and belief, beginning at least in July 2020, Palmisano repeated to coworkers, customers, and others that Mr. Lang stole the alleged $12,000 from his vehicle.

93.      Mr. Lang's former coworkers have reported this back to Mr. Lang on multiple occasions, ranging from shortly after his termination in July 2020 to recently as January 2021.

94.      Upon information and belief, Palmisano knows that his allegations of theft against Mr. Lang are false, but Palmisano has made and continues to make these these defamatory statements with the specific intent of harming Mr. Lang's reputation in the boatyard industry and greater community.

95.      Upon information and belief, Palmisano continues to make these false statements and yet has never reported the alleged "theft" to the police or any other authority.

96.      Upon information and belief, Palmisano's statements have irreparably harmed Mr. Lang's professional and personal reputation and relationships within boatyard business and greater communities.

**K.      Mr. Lang Demands Payment for His Minimum Wages and Sales Commissions**

97.      At some point soon after his termination in June 2020, Mr. Lang formally demanded both in person at Boat Yard's sales office, and also via a written email to Lawrence Palmisano and other Boat Yard employees, that defendants pay Mr. Lang his earned but unpaid commissions and wages, and that Mr. Lang would pursue legal action against defendants unless he was paid the full amount owed.

98.      Defendants refused to pay Mr. Lang the commissions and wages he was owed.

99.     Upon information and belief, at all times relevant to this case, defendants took these unlawful employment actions against Mr. Lang willfully, in knowing violation of both the FLSA and Louisiana state law, and for the purposes of enriching themselves at the expense of Mr. Lang.

## CAUSES OF ACTION

### A.     Unpaid Minimum Wage under the Fair Labor Standards Act Against Boat Yard

100.    Mr. Lang states a cause of action against Boat Yard for unpaid minimum wages and all other available damages under the Fair Labor Standards Act, codified at 29 U.S.C. § 201 *et seq.*

101.    Under the Fair Labor Standards Act, "[e]very employer shall pay to each of his employees . . . not less than . . . $7.25 an hour . . . ."  29 U.S.C. § 206(a)(1).  An employer who violates the FLSA minimum wage provisions is liable to the employee for actual unpaid wages "as well as an 'additional equal amount as liquidated damages.'"  *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) (citing 29 U.S.C. § 216(b).  A prevailing employee is also entitled to his reasonable attorney's fees. *Id.* at 502.

102.    In this case, as alleged, Boat Yard employed Mr. Lang as a bona fide employee and inside salesman; Boat Yard did not assign any discretionary or professional job duties to Mr. Lang whatsoever; Boat Yard controlled the amount of hours that Mr. Lang worked; Boat Yard unilaterally set Mr. Lang's pay as only coming from earned sales commissions and provided no hourly rate; Boat Yard unilaterally decided to terminate Mr. Lang when it suited the company to do so; Boat Yard did not attempt to confect any written or verbal independent contractor agreement with Mr. Lang; Mr. Lang had no investment or risk in Boat Yard, and Mr. Lang was completely dependent on the company to earn his livelihood.  In all respects, Mr. Lang was a non-exempt, inside sales employee of Boat Yard.

103.    Moreover, during his employment Mr. Lang, personally, was engaged in commerce.  In the Fifth Circuit, "any regular contact with commerce, no matter how small, will result in [FLSA] coverage." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007).  Here, Mr. Lang's duties brought him into regular contact with commerce such that he acted as, in fact, an instrument of commerce of Boat Yard.  First, Boat Yard, by definition, existed as a company for no other reason than to engage in interstate sale and trade.  Boat Yard was headquartered in Marrero, Louisiana; purchased boats, vehicles, and other equipment from both in and out of state; had that equipment shipped to Marrero; sold the equipment in person, over the phone, or on the internet locally and nationally; and often shipped the boats or equipment to other states.  All of Mr. Lang's job duties were directed towards fulfilling Boat Yard's interstate business.  Mr. Lang personally sold and made ready boats and boating equipment purchased and shipped from both in and out of state and then delivered those sales locally and nationally.  Mr. Lang routinely and regularly used telephone to contact customers, suppliers, and people out of state for various sales or work projects.  Mr. Lang's work solely supported the interstate business and commerce of Boat Yard.

104.    Accordingly, Boat Yard at all times employed Mr. Lang as an employee engaged in commerce.

105.    Additionally, upon information and belief, at all times during years 2019 and 2020, Boat Yard had two or more employees and had an annual gross volume of sales exceeding $500,000.

106.    As alleged, during his employment with Boat yard, Mr. Lang worked an average of at least 50 hours per week.  As described in this complaint, during multiple workweeks Boat Yard failed to pay Mr. Lang the minimum wage he was entitled to during the workweek when dividing his total hours worked by the total commissions he received.

107.    As alleged throughout this complaint, Boat Yard failed to pay Mr. Lang approximately and at least $2,809.76 in minimum wages.

108.    Upon information and belief, as alleged throughout this complaint, Boat Yard willfully failed to pay Mr. Lang these wages, knowing that its conduct was unlawful under federal law.

109.    Accordingly, Boat Yard owes Mr. Lang approximately and at least $2,809.76 in minimum wages, plus an equal amount in liquidated damages, plus Mr. Lang's reasonable attorney's fees and costs incurred in this litigation.

**B.     Unpaid Minimum Wage under the Fair Labor Standards Act Against Lawrence Palmisano**

110.    Mr. Lang states a cause of action against Lawrence Palmisano for unpaid minimum wages and all other available damages under the Fair Labor Standards Act, codified at 29 U.S.C. § 201 *et seq.*

111.    Plaintiff incorporates by reference here all prior allegations contained in this complaint.

112.    An "employer" under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In the Fifth Circuit, an individual may be liable for a company-employer's FLSA violations when that person exercises "operating control" control over the company, such that the person "(1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records." *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 (5th Cir. 2012).

113.    In this case, as alleged, Lawrence Palmisano held exclusive and total operating control over Boat Yard, and Lawrence Palmisano specifically hired Mr. Lang, specifically set Mr. Lang's method and amount of pay, specifically did not pay Mr. Lang an hourly rate, and specifically refused to pay Mr. Lang's earned wages both before and after his termination. Further, Mr.

Palmisano was the sole decision-maker with regards to terminating Mr. Lang.  In all respects, Lawrence Palmisano not only possessed total operating control of Boat Yard, but in reality, Boat Yard appears to have been merely the alter-ego of Mr. Palmisano.

114.    Accordingly, Lawrence Palmisano owes Mr. Lang, in solidary liability with Boat Yard, the total amount of at least $2,809.76 in earned but unpaid minimum wages, plus liquidated damages, plus Mr. Lang's reasonable attorney's fees and costs incurred in this litigation.

**C.      Unpaid Commissions under Louisiana Revised Statute 23:631 against Boat Yard**

115.    Mr. Lang states a cause of action against Boat Yard for his earned but unpaid sales commission pursuant to Louisiana's so-called "Last Paycheck Law" codified at La. Rev. Stat. Ann. § 23:631 *et seq.*  In Louisiana, earned commissions are considered wages under the Last Paycheck Law.  *Mipro v. Lycee Francais de La Nouvelle-Orleans, Inc.,* 2013-1604 (La.App. 4 Cir. 7/2/14); 146 So.3d 650, writ denied sub nom. *Mipro v. Lycee Francais de la Nouvelle-Orleans, Inc.,* 2014-1652 (La. 10/31/14); 152 So.3d 157; *and also Jeansonne v. Schmolke,* 2009-1467, p. 14 (La. App. 4 Cir. 5/19/10); 40 So.3d 347, 359 (so holding).

116.    In this case, as alleged, Boat Yard employed Mr. Lang as a bona fide employee.

117.    As alleged, Mr. Lang earned sales commissions for which Boat Yard did not timely pay him.

118.    The known total amount of sales commissions earned by Mr. Lang but not timely paid by Boat Yard is approximately $13,022.15.

119.    Shortly after his termination, Mr. Lang demanded payment of these commissions multiple times, including once directly by email to Lawrence Palmisano on or around July 16, 2020 and in person at the Boat Yard.

120.    Boat Yard has continued to fail to pay Mr. Lang the amount of commissions still owed.

121.   More than 90 days have elapsed since the time Mr. Lang first demanded payment of his earned sales commissions after his termination, on or around July 16, 2020.

122.   During Mr. Lang's final two (2) weeks of employment, he earned approximately $14,584.65 , for an average daily rate of pay equaling $1,041.76.

123.   Accordingly, Boat Yard owes Mr. Lang earned but unpaid commissions of $13,384.65, plus statutory damages equal to 90 days of Mr. Lang's daily rate of pay, plus his reasonable attorney's fees and costs incurred in this litigation.

**D.     Unpaid Commissions under Louisiana Revised Statute 23:631 against Lawrence Palmisano**

124.   Mr. Lang states a cause of action against Lawrence Palmisano for his earned but unpaid sales commissions pursuant to Louisiana's so-called "Last Paycheck Law" codified at La. Rev. Stat. Ann. § 23:631 *et seq.*

125.   Plaintiff incorporates by reference here all prior allegations contained in this complaint.

126.   As alleged, Lawrence Palmisano purposefully refused to pay Mr. Lang his earned sales commissions.

127.   Upon information and belief, Mr. Palmisano merely used Boat Yard as his alter-ego in an attempt to run his own personal business without incurring any personal financial liability.

128.   Accordingly, Lawrence Palmisano owes Mr. Lang, in solidary liability with Boat Yard, earned but unpaid sales commissions totaling approximately $13,384.65, plus statutory damages equal to 90 days of Mr. Lang's daily rate of pay, plus his reasonable attorney's fees and costs incurred in this litigation.

**E.     Defamation *Per Se* against Lawrence Palmisano**

129.   Mr. Lang states a cause of action against Lawrence Palmisano for defamation *per se* under La. Civ. Code art. 2315.

130.    "A cause of action for the tort of defamation arises out of Louisiana Civil Code article 2315." *Hoffman v. Bailey*, 257 F.Supp.3d 801, 819 (E.D. La. 2017) (citing *Costello v. Hardy*, 03-1146, at 13-14 (La.1/21/04), 864 So. 2d 129, 140 at n.10)).   "The five essential elements of defamation are defamatory words, publication, falsity, malice and resulting injury . . . ." *Nursing Enterprises, Inc. v. Marr*, 30,776 (La. App. 2 Cir. 8/19/98), 719 So. 2d 524, 530.   "Defamatory words are defined as words which tend to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating with him." *Id.*   "To be actionable, the words must be communicated or published to someone other than the plaintiff." *Id.*   "Words which expressly or implicitly accuse another of criminal conduct or which, by their nature, tend to injure one's personal or professional reputation are considered defamatory *per se*. If the plaintiff proves publication of defamatory *per se* words, the elements of falsity and malice are presumed although they may be rebutted by the defendant." *Id.*   "Injury is also presumed [and] may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish even when no special damage, such as loss of income, is claimed." *Id.*

131.    In this case, upon information and belief, Palmisano has repeatedly communicated false and defamatory statements to Mr. Lang's former co-workers, customers, and others that Mr. Lang stole $12,000 from his vehicle, an alleged crime of felony theft under Louisiana law. *See* La. Rev. Stat. Ann. § 14:67(B)(2) (providing that theft of greater than $5,000 but less than $25,000 is a felony offense).   Mr. Lang never stole any money from Mr. Palmisano.   Upon information and belief, Mr. Palmisano knows that his accusations against Mr. Lang are false and defamatory.   Upon information and belief, Mr. Palmisano has never reported Mr. Lang to any law enforcement agency based on these false allegations.   Accordingly, these false accusations of "theft" against Mr. Lang

constitute express accusations of criminal conduct and are thus defamatory *per se* under Louisiana law.  Upon information and belief, Mr. Palmisano's repeated false accusations have damaged Mr. Lang's professional and personal reputation and relationships.

132.    Accordingly, Palmisano is liable to Mr. Lang for all damages, including economic, non-economic, and presumed damages, caused by Palmisano's defamatory statements, including compensatory damages and any other general or equitable relief due to plaintiff in this matter.

## JURY DEMAND

Mr. Lang requests a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Jarred Lang prays that this complaint be deemed good and sufficient; that it and summons be served upon defendants Lawrence Palmisano, III and The Boat Yard, Inc.; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against all defendants awarding the following relief:

1.    The entry of a declaratory judgment in favor of plaintiff and against defendants declaring that they purposefully violated plaintiff's rights under both federal and Louisiana state law as alleged herein;

2.    An award of unpaid minimum wages owed in favor of plaintiff and against defendants under the FLSA, including additional money damages to offset any negative tax consequence paid or owed by plaintiff associated with the award of unpaid minimum wages;

3.    An award of liquidated damages in favor of plaintiff and against defendants under the FLSA equal to the amount of plaintiff's unpaid minimum wages;

4.    An award of unpaid commissions and wages owed in favor of plaintiff and against defendants under La. Rev. Stat. Ann. § 23:631 *et seq.*;

5.    An award of penalty damages in favor of plaintiff and against defendants under La. Rev. Stat. Ann. § 23:631 *et seq.* equal to 90 days of plaintiff's wages at the time of his termination;

6.     An award of economic, general, and presumed damages in favor of plaintiff and against defendants under La. Civ. Code art. 2315 and any other applicable Louisiana state law based on defendant Palmisano's defamation *per se* against plaintiff;

7.     An award of reasonable attorney's fees, expert witness fees, and litigation costs incurred in this matter in favor of plaintiff and against defendants under the FLSA and La. Rev. Stat. Ann. § 23:631 *et seq.*;

8.     An award of pre-judgment and post-judgment interest in favor of plaintiffs and against defendants; and,

9.     An award for all other legal and equitable relief to which plaintiff is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email:  vogeltanz@gmail.com

*Attorney for Jarred Lang*

DocuSign Envelope ID: FEB788G9-7EE4-43CD-98AB-68193BD95A19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JARRED LANG** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. PENDING** |
| **LAWRENCE PALMISANO, III and THE BOAT YARD, INC.** | |
| **Defendants.** | |

## DECLARATION OF JARRED LANG

I, Jarred Lang, am over the age of 18 years, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts are true and correct to the best of my knowledge and recollection at the time this declaration is made:

1.      I am the named plaintiff in the lawsuit *Lang v. Palmisano et al.* soon to be filed in the United States District Court for the Eastern District of Louisiana.

2.      I authorized my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein, including under the Fair Labor Standards Act.

3.      I verify that, at the time of its filing, each allegation of the Complaint is true and correct to the best of my knowledge and recollection.

Executed on this date      4/13/2021
_____

DocuSigned by:

83BD9771E3C943A...
_____
Jarred Lang